**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ALLIED INDEPENDENT UNION, CUA, Respondent.**

No. 11792.

United States Court of Appeals Seventh Circuit.

Nov. 5, 1956.

Theophil C. Kammholz, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Fannie M. Boyls, Nancy M. Sherman,

Attys., National Labor Relations Board, Washington, D. C., for petitioner.

Sydney M. Eisenberg, Milwaukee, Wis., for respondent.

Before DUFFY, Chief Judge, and LINDLEY and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

The Labor Board petitions for enforcement of its order issued October 7, 1955 against respondent Allied Independent Union, CUA, hereinafter called "Independent". The Board found that Independent violated Section 8(b) (1) (A) and (2) of the Act, 29 U.S.C.A. § 158(b) (1) (A), (2), by causing Krambo Food Stores, Inc., to discharge employees Grantham and Lightner. The Board's decision and order is reported at 114 NLRB No. 55.

Krambo operates some 26 retail food stores in Wisconsin. Its total purchases from outside Wisconsin exceed two million dollars annually. In December, 1950, the Wisconsin Employment Relations Board certified Independent as the collective bargaining representative for the employees of certain stores operated by Krambo including the store here involved. On January 29, 1951, the Company and Independent executed a 2-year collective bargaining contract. In November, 1951, at a time when the agreement had more than a year to run, Local 1469, Retail Clerks International Association AFL, hereinafter called "Retail Clerks" filed a petition with National Labor Relations Board seeking a certification as the bargaining representative of the employees in the unit covered by the contract. The Board directed an election holding that Independent's contract did not bar an election because the union-security clause of the contract was unlawful. 98 NLRB 1320. The Retail Clerks won the election, and after being certified as bargaining representative in December, 1952, entered a collective bargaining agreement with the Company in February, 1953.

In a subsequent unfair labor practice proceeding against the Company, the Board on August 25, 1953, on the basis of additional evidence not before it at the previous representation proceeding, reversed its earlier holding that the union-security clause in the Independent's contract was illegal. 106 NLRB 870, 874. Thereafter the Company again recognized Independent as the employees' collective bargaining representative and reinstated its bargaining agreement with Independent. This agreement required all employees as a condition of continued employment, to become and remain members of Independent in good standing.

Prior to the August 25, 1953 decision of the Board, the employees had been paying dues to the Retail Clerks whose contract also contained a union shop provision. This contract expired on September 20, 1953. On the following day, after the Company had again recognized Independent, that organization posted the following notice on the store bulletin boards:

"Krambo Employees

"In accordance with our contract now in effect, all employees in the grocery and produce departments are required to become members of the AIU-CUA after 30 days of employment. This applies to all those employees working 15 hours or more per week.

"We expect you to pay your initiation fees and dues before October 1, 1953, in order to continue your employment at Krambo. Your dues will be credited for the month of October, 1953.

"Kindly pay your initiation fee and dues to the union representative in your store."

On October 6, the Independent held a meeting attended by its secretary-treasurer, and all but one of its stewards. President Sorenson was the presiding officer, and the minutes reflect that he said:

"It is a pleasure to report that all eligible employees of the Krambo Grocery Department have paid their dues during the month of September,

1953. In this connection allow me to remind you that this Union had no intentions of collecting dues for the period during which the AFL grocery clerks were erroneously granted rights by the National Labor Relations Board. In view of the N.L.R.B.'s directive of August 25th 1953, in which an earlier decision was reversed, this Union had an absolute right to insist on the payment of dues for the months of August and September 1953. However, we felt that since so much confusion existed because some members may have paid dues to the AFL grocery clerk's union, it would be advisable to insist on the payment of dues on or before the last day of September and that membership dues cards be punched for October 1953. I, therefore, recommend that this pattern of dues payments be continued and remain in effect as long as the Allied Independent Unions, CUA continue as your bargaining agents, and that this pattern of dues payments be made a part of the records. A motion was made to adopt the above pattern of dues payments and that it remain in force as long as the Allied Independent Unions, CUA continues to represent us as bargaining agents. The motion was duly seconded and passed without a dissenting voice."

By a letter dated December 31, 1953, President Sorenson informed the Company that Grantham and Lightner were "not members in good standing" and requested their discharge under the union shop agreement. He personally requested the Company to discharge them on the ground that they "had refused to pay their dues in the month of December," and that their dues were unpaid "for the month of December." On January 4, 1954 the store manager informed Grantham that she and Lightner were being terminated because they had not paid their union dues. Employment Supervisor Leaman told Grantham that her work had been 100% satisfactory. The Store Supervisor told her "you have been one of the best girls we have."

On January 5, Lightner and Grantham each sent identical letters to Sorenson enclosing money orders in the amount of $1.50 to cover dues in Independent for the month of January, 1954. Each contended that she had paid her regular monthly dues to that date. The money orders were returned by Sorenson.

There is no dispute that Lightner and Grantham each paid dues during the months of October, November and December, 1953. Grantham's card had been punched in the October and November squares and Retzlaff, the steward, placed her initials in the December square explaining she had not yet obtained the punch from her predecessor. Lightner paid one month's dues on October 1st and again the amount for monthly dues in November at which time the squares on her card for October and November were punched. On November 30 or December 1 she paid her third month's dues to Sorenson but she had forgotten to bring her card with her and Sorenson was therefore, unable to punch out the December square.

The Constitution and By-laws of Independent provide that members "who have become delinquent in the payment of their dues * * * for a period exceeding 30 days shall be considered not to be in good standing." It is the contention of Independent that the three dues payments made by each Grantham and Lightner covered the months of September, October and November, 1953, and that punching their cards for October, November and December was only for the purpose of showing when the 30-day grace period expired. There was evidence before the Board to support Independent's argument in this respect.

Our sole function on this review is to ascertain whether, considering the record on the whole, substantial evidence supports the Board's finding that employees Grantham and Lightner were union members in good standing at the time Independent caused their discharge.

We think such substantial evidence does exist and, therefore, Independent violated Section 8(b) (1) (A) and (2) of the Act.

The Board's order will be enforced.